UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES CARUTH, | ) | |
| | ) | |
| Plaintiff, | ) | No. 16 C 6621 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| WEXFORD HEALTH SOURCES, INC., | ) | |
| ANDREW TILDEN, JOHN TROST, | ) | |
| SALEH OBAISI, ROZEL ELAZEGUI, | ) | |
| RILIWAN OJELADE, JOE SANGSTER, | ) | |
| MARY SCHWARZ, and KUL SOOD, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

James Caruth has long suffered from lower back pain, numbness, and a large lump in his left buttock. Caruth brought this complaint challenging his medical treatment at a number of different Illinois prisons, dating back to 1997.[1] The Defendants all moved to dismiss the current version of Caruth's complaint. *See* R. 110, Wexford Mot. Dismiss; R. 130, Sood and Schwarz Mot. Dismiss.[2] They argue that some of his deliberate-indifference claims are barred by the statute of limitations, and that his medical malpractice allegations fail to state a claim upon which relief can be granted and are not properly supported by affidavits as required by Illinois

---

[1]This Court has subject matter jurisdiction over the federal claims under 28 U.S.C. §§ 1331. The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

[2]All the defendants are apparently associated with Wexford, and Wexford's counsel represents all the defendants. However, Defendants Sood and Schwarz filed a separate motion to dismiss. For simplicity's sake, the first motion to dismiss—filed by Wexford and all the individual defendants except Sood and Schwarz—will be abbreviated as the "Wexford Mot. Dismiss." The other motion will be the "Sood and Shwarz Mot. Dismiss."

law. *Id*. For the reasons stated below, the motions to dismiss are denied, except as to certain claims related to treatment by Defendants Tilden and Ojelade before October 2013.

**I. Background**

Since 1997, Caruth has bounced back and forth among a number of different Illinois prisons. *See* Second Am. Compl. at ¶¶ 22-136. Caruth's health problems (at least the ones relevant to this case) began at Pontiac Correctional Center in 1997 or 1998. *Id*. ¶ 23. While at Pontiac, Caruth experienced severe lower back pain and numbness to his neck and arms. *Id*. ¶ 23. X-rays of Caruth's lower back were taken, and Caruth was examined by a bone specialist. *Id*. ¶ 24. The specialist recommended surgery to treat Caruth's back issues. *Id*. ¶ 24. The specialist submitted his findings to Pontiac's medical director and recommended that Caruth undergo surgery, but the medical director denied the request. *Id*. ¶¶ 25-26. Instead, Caruth was provided with Ibuprofen and a back brace, which Caruth says was severely damaged. *Id*. ¶ 27.

Over the next decade or so, Caruth continued to experience lower back pain and numbness. *Id*. ¶¶ 30-44. Caruth never got surgery for his condition. *Id*. ¶¶ 22-136. He did have a back brace during some of this time, but sometimes the brace was damaged, and sometimes he did not get a brace at all. *See id*. ¶¶ 32, 37-40. In September 2012, a doctor at Stateville requested an MRI or CAT scan for Caruth, but that request was denied. *Id*. ¶ 43. Instead, physical therapy was ordered, but the physical therapy never took place. *Id*. ¶ 44.

By 2012, Caruth had developed another painful medical condition: a large lump in his buttock. *Id.* ¶ 46. At the time, Caruth was again incarcerated at Pontiac. *See id.* ¶¶ 45-46. Riliwan Ojelade, who is a physician's assistant, diagnosed the lump as a fatty tumor. *Id.* ¶ 46. Caruth asked Ojelade to remove the lump, but she denied his request and prescribed Ibuprofen. *Id.* ¶ 46.

Over the next four years or so, Caruth complained of his medical conditions—that is, the lower back pain and related numbness, and the painful lump—to many medical providers (some of whom are now defendants in this case) at the various prisons where he was housed. *See id.* ¶¶ 47-136. He alleges that each of these providers failed to properly evaluate, diagnose, or treat his conditions. *Id.* Indeed, he alleges that some of the treatment he *did* receive was actually inappropriate and caused other health problems. *Id.* ¶¶ 29, 107. Caruth also filed numerous grievances and sick-call requests seeking treatment, to no avail. *See, e.g., id.* ¶¶ 51, 55-56, 59, 66, 69-70, 86-88. In 2015 and 2016, Caruth did, however, receive an MRI and x-rays, which showed that his back condition was worsening. *Id.* ¶¶ 72, 83. Caruth alleges that he *never* received appropriate treatment for his back pain, numbness, and lump, and that he was deprived of medications that help with his condition. *See id.* ¶¶ 19, 136.

## II. Legal Standard

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain

3

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

A motion to dismiss based on the statute of limitations, on the other hand, is properly characterized as a motion for judgment on the pleadings under Rule 12(c). *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (citing *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009)). Like a Rule 12(b)(6) motion, the allegations must be taken as true. *Ollison v. Wexford Health Sources, Inc.*, 2016 WL 6962841, at *4 (N.D. Ill. Nov. 29, 2016). Although a plaintiff is not required to plead around affirmative defenses, dismissal can be appropriate if the complaint's own allegations reveal that the statute of limitations expired before the suit's filing. *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 383 (7th Cir. 2010).

## III. Analysis

### A. Statute of Limitations

The Defendants argue that Caruth's claims based on his back pain and numbness must be narrowed based on the statute of limitations. The claims arise out of injuries he suffered while imprisoned in Illinois, so Illinois's two-year statute of limitations for medical malpractice governs, even for the § 1983 claims. *See Devbrow v. Kalu*, 705 F.3d 765, 768-69 (7th Cir. 2013); 735 ILCS 5/13-212(a). Federal law, on the other hand, governs the date on which the claim *accrues*. *Devbrow*, 705 ILCS at 768. When a deliberate-indifference claim is premised on refusal to provide treatment, the claim does not accrue until either the prisoner gets treatment or until the defendant no longer "had the power to do something about [the prisoner's] condition"—for example, when the prisoner leaves the prison. *Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001).

#### 1. Wexford

Caruth alleges that Wexford was responsible for medical care at each of the facilities where he has been incarcerated over the last twenty-plus years. Second. Am. Compl. ¶ 13. Caruth also alleges that Wexford's policies or practices—among other things, delaying or cancelling medical appointments and delaying or denying important medical procedures—caused the continuous denial of care that he experienced from 1997 or 1998 to the present. *See* Am Compl. ¶¶ 144-160. Taking those allegations as true (as the Court must at this stage), Crawford's claims against Wexford are not barred by the statute of limitations. Crawford has alleged a

continuing violation of his rights dating from 1997 or 1998, and Wexford had the power at all times to "do something" about Caruth's condition. *See Heard*, 253 F.3d at 318. If the facts alleged are true, then the statute of limitations would not bar the claims.

Of course, the facts alleged might turn out *not* to be true. But that is a question for summary judgment or for trial, not a motion to dismiss. The Court might even consider an early motion for summary judgment on the issue of the statute of limitation if it appears clear that Wexford's liability should be cut off at some earlier date (though Wexford must ask leave to file an early motion and show good cause). But for now, Caruth's claims against Wexford survive the statute of limitations.

### 2. Tilden and Ojelade

The story is different for Defendants Tilden and Ojelade, at least for the claims arising out their alleged conduct in 2012 and 2013. Caruth alleges that Tilden and Ojelade treated him (or, really, failed to treat him) during his stint at Pontiac from September 2012 to October 2013. Second Am. Compl. ¶¶ 45-49. But Crawford alleges that he changed prisons in October 2013, meaning that he left Tilden and Ojelade's care. *Id.* ¶ 49. At that point, neither Tilden nor Ojelade had the power to help Caruth, so his claims against them accrued when he left Pontiac in October 2013. *See Heard*, 253 F.3d at 318; *Ollison*, 2016 WL 6962841, at *5. To be sure, it is not explicit from the face of the complaint that Tilden and Ojelade only provided care at Pontiac and not the other prisons mentioned in the complaint. *See* Second Am. Compl. ¶¶ 14-17. But neither is there any mention of Tilden or Ojelade providing services except at

6

Pontiac, and Caruth apparently concedes in his brief that they were stationed at Pontiac. *See* Pl. Resp. Wexford Mot. Dismiss at 16. What's more, the Court has already allowed Caruth substantial leeway to plead his claims broadly; there is a limit to how far inferences can be drawn from vague group allegations that all the individual defendants were employed by Wexford as prison health care providers. *See id.* ¶¶ 12-16. Caruth's claims about Tilden and Ojelade's treatment of his back pain and numbness[3] before October 2013 are dismissed.[4]

### B. Motion for More Definite Statement

As an alternative to its motion to dismiss based on the statute of limitations, Wexford moves for a more definite statement under Rule 12(e). The "more definite statement" Wexford requests would require Caruth to nail down specific dates for his *Monell* claims. Wexford Mot. Dismiss at 6. So, really, the motion for a more definite statement seems to be an effort to get Caruth to plead facts that would help Wexford present its statute of limitations defense at the pleadings stage. That is not the purpose of Rule 12(e), which is designed for pleadings that are "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Rule 12(e) motions are "designed to strike at unintelligibility rather than want of detail." *Mission Measurement Corp. v. Blackbaud, Inc.*, 216 F. Supp. 3d 915, 917 (N.D. Ill. 2016). In this case, the operative complaint is not unintelligible. To the contrary, it is

---

[3]The Defendants did not argue that claims based on Tilden and Ojelade's pre-October 2013 treatment of the lump should be dismissed. *See* R. 122, Wexford Reply at 6.
[4]If the Court has misunderstood the allegations and Caruth truly intends to argue that he was continuously under Tilden and Ojelade's care from 2012 through 2017, then Caruth is welcome to file a motion to reconsider the dismissal.

quite clear enough to put Wexford on notice of the claims against it, which is all that is required at this stage. *Twombly*, 550 U.S. at 555-56. Caruth, of course, is *not* required to plead around the statute of limitations in order to ease his opponents' discovery burdens. Indeed, forcing Caruth to identify specific dates at this stage would be particularly inappropriate, because Wexford is far more likely than Caruth to have specific information about the dates its policies were in place. *See Wright v. Vill. of Phoenix*, 2000 WL 246266, at *9 (N.D. Ill. Feb. 25, 2000). The motion for a more definite statement is denied.

### C. Failure to State a Claim

Next, the Defendants argue that Caruth has failed to state a claim for medical malpractice against any of the individual defendants. *See* Wexford Mot. Dismiss at 8-9; Sood and Schwarz Mot. Dismiss at 2-3. But this argument fails as well. Rule 8(a) requires only a short and plain statement sufficient to give the defendant fair notice of what the claim is and the grounds on which it rests. Fed. R. Civ. P. 8(a)(2); *Twombly*, 550 U.S. at 555-56. The factual allegations need not be detailed; all they must do is "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545. In this case, Caruth alleges that each individual defendant was or should have been aware of Caruth's medical problems (based on Caruth's own verbal complaints and Caruth's medical records), but refused to provide treatment or provided only inappropriate treatment. *See* Second Am. Compl. ¶¶ 47-48, 63-64, 101-103, 104-05, 109, 117-18, 121-23, 124-26, 128-135. Under the circumstances, that is enough to state a plausible medical malpractice claim. And even if that were not enough, the

8

physician's report filed along with the complaint explains the basis for the claims in even more detail, easily providing enough factual material to render the malpractice claims plausible. *See generally* R. 85, Physician's Report of Irwin M. Siegel, M.D. The motion to dismiss the medical malpractice claims is denied.

### D. Section 5/2-622 Affidavit and Physician's Report

Finally, the Defendants argue that the medical malpractice claims must be dismissed for failure to comply with the affidavit requirements set forth in the Illinois medical malpractice statute, 735 ILCS 5/2-622. Specifically, Section 2-622 requires every medical malpractice complaint to be accompanied by an attorney affidavit and a written report by a health professional certifying that "a reasonable and meritorious cause for filing the action exists." 735 ILCS 5/2-622(a)(1). On the physician's report requirement, the Defendants argue that the report is too non-specific to comply with Illinois law.

That argument is rejected. The point of the physician-certification requirement is to weed out frivolous lawsuits by requiring "a minimum amount of merit, not a likelihood of success." *Sherrod v. Lingle*, 223 F.3d 605, 614 (7th Cir. 2000). Illinois courts caution that these reports are to be construed liberally, and that generally speaking, cases should be allowed to go forward so that they can be decided on the merits. *Peterson v. Hinsdale Hosp.*, 599 N.E.2d 84, 89 (Ill. App. Ct. 1992). A physician's report meets the requirements of Section 2-622 as long as it is "sufficiently broad to cover each defendant, adequately discusses deficiencies in the medical care given by defendants, and establishes that a reasonable and meritorious cause exists

9

for filing the action." *Sherrod*, 223 F.3d at 614 (quoting *Neuman v. Burstein*, 595 N.E.2d 659, 664 (Ill. App. Ct. 1992)). That means that the report is sufficient as long as it "describe[s] both the deficiencies in medical care that gave rise to plaintiff's claim and the reviewing professional's reasoning," and either states the standard of care or explains how the plaintiff's condition could have been improved by an alternative course of conduct. *Ortiz v. United States*, 2014 WL 642426, at * 3 (N.D. Ill. Feb. 19, 2014) (applying Illinois law); *Jones v. Wexford Health Sources, Inc.*, 2016 WL 6524953, at *4 (N.D. Ill. Nov. 3, 2016). The plaintiff need not provide a separate report for each defendant. *Peterson*, 599 N.E.2d at 88; *Brems v. Trinity Medical Ctr.*, 693 N.E.2d 494, 497 (Ill. App. Ct. 1998). "In a cause of action where charges of negligence are the same as to each defendant, and where they are sufficiently broad, a single report is sufficient to cover several defendants." *Peterson*, 599 N.E.2d at 88.

In this case, the physician's report prepared by Dr. Irwin Siegel is detailed and specific enough to comply with Section 2-622. The report sets out Caruth's medical condition (degenerative disk disease), identifies the recommended standard of care (spinal surgery, epidural steroid injections, an orthopedic consultation, appropriate back exercises), and states how the defendants fell short (providing only palliative medication and treatments with indifference to their effectiveness). Physician's Report ¶¶ 4, 6, 10-14. The Defendants argue that the report does not identify how each individual defendant fell short, but the report is clear enough: Dr. Siegel states that the medical professionals at Menard, Pontiac, and Stateville failed to exercise adequate medical judgment, and it is clear from the complaint who those providers

10

are. *See* Physician's Report ¶ 13; Pl. Resp. Wexford Br. at 16. Nor did Siegel need to explain what particular actions each defendant took. All defendants are alleged to have engaged in essentially the same conduct—ignoring and refusing to treat Caruth's spine condition—so this is a complaint where the "charges of negligence are the same as to each defendant," and a single report is sufficient. *See Peterson*, 599 N.E.2d at 88.

There is also no need for Caruth to file a report by a physician's assistant for his claims against Ms. Ojelade, who is a physician's assistant. Section 2-622 sets forth the circumstances where a physician's report must be filed by a health professional in the same profession: where the defendant is "a physician licensed to treat human ailments without the use of drugs or medicines and without operative surgery, a dentist, a podiatric physician, a psychologist, or a naprapath." 735 ILCS 5/2-622(a)(1). For all other defendants, the report must come from a "physician licensed to practice medicine in all its branches." *Id*. Physician's assistants are not on the list of defendants who require a report from a health professional in the same field, so Dr. Seigel's report is sufficient for the claims against Ms. Ojelade.

Moving on to the attorney affidavit, Caruth concedes that there was no attorney affidavit attached to the Second Amended Complaint. But that does not require dismissal. As discussed earlier, Illinois courts interpret Section 2-622 liberally and in favor of allowing cases to move forward. "[A]mendments to pleadings are to be liberally allowed to enable medical malpractice actions to be decided on their merits rather than on procedural technicalities." *Peterson*, 599 N.E.2d at 89; *see also*

11

*Hahn v. Walsh*, 762 F.3d 617, 633-34 (7th Cir. 2014); *Cammon v. W. Suburban Hosp. Med. Ctr.*, 704 N.E.2d 731, 738-39 (Ill. App. Ct. 1998) ("The plaintiff in a medical malpractice action should be allowed every reasonable opportunity to establish her case."). In this case, there is no reason to think that Caruth's initial failure to file an attorney affidavit was a result of bad faith, or that his failure prejudiced the defendants. *See Hahn*, 762 F.3d at 735. And he has already attached the required affidavit as an exhibit to the primary response brief. R. 120, Pl. Resp. Wexford Mot. Dismiss, Exh. 1. Caruth's request for permission to file the attorney affidavit is granted. This attorney affidavit should be promptly filed as a separate docket entry, but there is no need to re-file the entire complaint.

## IV. Conclusion

For the reasons explained above, the motion to dismiss the pre-October-2013 claims against Defendants Tilden and Ojelade is granted, but the motions to dismiss are otherwise denied.

ENTERED:

    s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: July 31, 2018

12